**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

JEFFREY ALAN VANCAMP,

   Plaintiff,

vs.         CASE NO. 3:08cv166-RS-MD

HARRY R. MCNESBY, Sheriff
of Escambia County, Florida; and
Deputy REX BLACKBURN,

   Defendants.

_____/

## ORDER ON MOTION TO DISMISS

   Before me is Defendants' "Motion to Dismiss, Or In the Alternative, Motion For More Definite Statement" (Doc. 4).  Plaintiff opposes the motion (Doc. 5).

### Background

   Plaintiff Jeffrey VanCamp, a deputy sheriff of Escambia County, Florida, has sued his supervisors, Defendant Rex Blackburn, also a deputy sheriff, and Harry McNesby, the Sheriff of Escambia County, alleging (1) that Defendants retaliated against him[1] for choosing a particular attorney to represent him in a wage

_____

[1]Plaintiff contends that McNesby retaliated against him by transferring him from Officer in Charge of the Crimestoppers Unit to a patrol position on the midnight shift, "a less desirable position in terms of status, prestige, and working

dispute with the Sheriff's Office[2] and (2) that Defendant Blackburn, as McNesby's agent, defamed him by submitting a letter containing false and defamatory statements about him to the editor of a local newspaper.  The newspaper published the letter.

The two-count complaint, based on 42 U.S.C. § 1983, 28 U.S.C. § 1343, and Florida common law, asserts a claim for violation of Plaintiff's right under the First, Fifth, and Fourteenth Amendments to the federal Constitution to freely associate with an attorney of his choosing and for defamation.[3]  The case was filed in the Circuit Court of the First Judicial Circuit, In and For Escambia County, Florida, and removed to this Court.

The motion requests dismissal, or in the alternative, more definite statements, of Plaintiff's claims for deprivation of his federal civil rights and for defamation under Florida law.  Defendants contend that both claims fail to state claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), or

_____

hours," and that Blackburn retaliated against him by making defamatory statements.  (Compl. Doc. 1-2 ¶¶ 17-20, 27.)

[2]Plaintiff contends that Defendants were angered that Plaintiff retained attorney Eric D. Stevenson to represent him in the wage dispute because Stevenson represented an "outspoken critic of McNesby and the Escambia County Sheriff's Office" in an unrelated matter.

[3]Defendants correctly note that the complaint fails to articulate which particular rights under the First, Fifth, and Fourteenth Amendments Defendants have allegedly violated.  In his response to the motion, however, Plaintiff unambiguously clarifies that "Plaintiff is clearly asserting an 'association' claim protected by the First Amendment . . ." (Mot. Resp., Doc. 5:7-8).  Accordingly, I will assume that Plaintiff intends to proceed on his claim for violation of his right of association under the First Amendment only and that Plaintiff has abandoned all other constitutional claims arising from the alleged retaliation.

alternatively, that both claims are so vaguely stated that the complaint cannot be reasonably answered.

## II.  Analysis

### A.  Dismissal Under Fed. R. Civ. P. 12(b)(6)

Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading which fails to state a claim upon which relief can be granted.  In deciding whether to dismiss, the court must accept as true all allegations of the complaint and construe those allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); *Lopez v. First Union Nat'l Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997); *Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir. 1993).

To satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz*, 534 U.S. at 511 (quoting *Scheuer*, 416 U.S. at 236); *United States v. Baxter Int'l, Inc.*, 345 F.3d 866. 881 (11th Cir. 2003).

Until the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The *Twombly*

Court rejected a literal reading of the "no set of facts" rule and held that although a complaint need not plead "detailed factual allegations" to survive a motion to dismiss for failure to state a claim, the complaint must contain enough factual matter (taken as true even if doubtful in fact) to establish a "plausible," as opposed to merely a "possible" or "speculative," entitlement to relief.  *Twombly*, 127 S. Ct. at 1964-66 (citations omitted).  A plausible entitlement to relief exists when the allegations in the complaint traverse the thresholds separating the "conclusory" from the "factual" and the "factually neutral" from the "factually suggestive."  *Id.* at 1966, n.5.  In addition, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.  *Id*. at 1964-65 (citations omitted).

## B.  First Amendment

The first issue is: Does a claim that a public employee has a right of free association under the federal Constitution to hire a particular attorney to represent him in a personal wage dispute with his employer, where the attorney retained has previously represented another employee in an unrelated case against the employer, state a claim upon which relief can be granted?  The motion and response provide little guidance on this question because they fail to address the relevant decisions.

### 1.  Right to Associate with Counsel

The right of a citizen to hire and consult an attorney is protected by the First Amendment's guarantees of freedom of speech, association, and petition.  *Denius*

*v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000) (*citing DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) ("The right to retain and consult an attorney . . . implicates not only the Sixth Amendment but also clearly established First Amendment rights of association and free speech."); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 376 n. 32, 97 S. Ct. 2691, 53 l. Ed. 2d 810 (1977) ("Underlying [the collective action cases] was the Court's concern that the aggrieved receive information regarding their legal rights and the means of effecting them.  This concern applies with at least as much force to aggrieved individuals as it does to groups."); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585-86, 91 S. Ct. 1076, 28 L. Ed. 2d 339 (1971) ("[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."); *United Mine Workers of Am. v. Illinois State Bar Ass'n*, 389 U.S. 217, 221-22, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967) ("[T]he freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."); *Brotherhood of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7, 84 S. Ct. 1113, 12 L. Ed. 2d 89 (1964) ("A State could not . . . infringe in any way the right of individuals and the public to be fairly represented in lawsuits . . . ."); *NAACP v. Button*, 371 U.S. 415, 429-30, 83 S. Ct. 328, 9 L. Ed.2d 405 (1963) ("[A]bstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion.")). *See also Malik v. Arapahoe Co. Dep't of Soc. Servs.*, 191 F.3d 1306, 1315 (10th Cir. 1999) ("[A]n individual's First Amendment rights of association and free speech are violated when a police officer retaliates against her for retaining an

attorney.")

The Seventh Circuit in *Denius* noted that:

> The right to obtain legal advice does not depend on the purpose for which the advice is sought.  This right applies equally to legal representation intended to advocate a political or social belief, *see Button*, 371 U.S. at 419-20, 83 S. Ct. 328, or to recover damages in a personal injury suit, *see United Mine Workers*, 389 U.S. at 223, 88 S. Ct. 353. *See also id.* (stating that in earlier cases 'we rejected the contention . . . that the principles announced in *Button* were applicable only to litigation for political purposes.").

*Denius*, 209 F.3d at 954.  The *Denius* court concluded that "[i]n sum, the First Amendment protects the right of an individual or group to consult with an attorney on any legal matter."  *Id*.


### 2.  Limits On First Amendment Rights Of Public Employees

Unlike the broad First Amendment protections enjoyed by private citizens, the First Amendment rights of state employees, while existent, are not absolute. *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). Although the law is clearly established that "[a] State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest[s] . . .[,]"  *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 142, 103 S. Ct. 1684, 1687, 75 L. Ed. 2d 708 (1983); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), the Supreme Court has stated that the "State's interest as an employer in regulating the speech of its employees differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in

general."  *Cook*, 414 F.3d at 1318 (*citing Connick, supra*).  "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).  According to the Court, "[t]he problem in any case is to arrive at a balance between [the First Amendment interests] of the employee, as a citizen, . . . and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734, 20 L. Ed. 811 (1968).  "[G]overnment offices could not function if every employment decision became a constitutional matter."  *Connick*, 461 U.S. at 143.  The First Amendment does not empower public employees to "constitutionalize the employee grievance."  *Garcetti*, 547 U.S. at 420 (*citing Connick*, 461 U.S. at 154).

### a.  Free Speech

Various Supreme Court and Eleventh Circuit decisions have attempted to define the appropriate balance between the First Amendment rights of state employees and the interests of their employers in regulating those rights.  Because the evolution of decisions addressing the right to free speech of public employees informs the analysis of  Plaintiff's free association claim, I review both categories of cases below.  *See Local 491, Int'l Brotherhood of Police Officers v. Gwinnett County*, 510 F. Supp. 2d 1271, 1288 (N.D. Ga. 2007) (holding that the plaintiff's freedom of association claim "is controlled by the now familiar principles applicable to challenges to public employee speech restrictions.")

In *Pickering*, the Supreme Court held that a board of education's dismissal of a public school teacher because of the publication of a letter which he wrote to

the editor of a local newspaper, criticizing the way in which the board and the superintendent had handled past proposals to raise revenue for the schools, violated the teacher's constitutional right to free speech.  The Court reasoned that because the teacher's comments related to a matter of public concern, although critical of school officials, it did not interfere with the maintaining of discipline by immediate supervisors or harmony among co-workers.  391 U.S. at 570.  Further, the Court concluded that the teacher's employment relationships with school officials did not constitute the kind of close working relationships for which it could be persuasively claimed that personal loyalty and confidence were necessary for their proper functioning.  391 U.S. at 573.  The Court stated that "the interest of the school administration in limiting teachers' opportunities to contribute to public debate [was] not significantly greater than its interest in limiting a similar contribution by any member of the general public."  *Id*. at 573.   "[I]n a case, such as the present one, in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be."  391 U.S. at 574.

The Court's decisions following *Pickering* reinforced the safeguard on speech relating to matters of public concern.  *See Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (a teacher's testimony before committees of the Texas legislature and public disagreements with school officials over whether a college should be elevated to four-year status were matters of public concern and are constitutionally protected).  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 l. Ed. 2d 471 (1977) (teacher's public communication to local radio station about school principal's memorandum

on teacher dress and appearance was protected speech under First Amendment).

In *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979), the Court clarified that First Amendment protection was not limited to speech on matters of public concern; rather, constitutional protection, given the right circumstances, could extend to a public employee's private speech as well.  In *Givhan*, the Court vacated the Fifth Circuit's finding that a teacher's private complaints and opinions to her school principal about racial discrimination, a matter of public concern, were not protected under the First Amendment.  The Court emphasized that its decisions in *Pickering*, *Perry*, and *Mt. Healthy* "did not support the conclusion that a public employee forfeits his protection against governmental abridgement of freedom of speech if he decides to express his views privately rather than publicly." 439 U.S. at 414, 99 S. Ct. at 695-96.  "While [*Pickering*, *Perry*, and *Mt. Healthy*] arose in the context of a public employee's public expression, the rule to be derived from them is not dependent on that largely coincidental fact."  439 U.S. at 414, 99 S. Ct. at 696.  The Court also noted that determining whether a public employee's public expressions are constitutionally protected may require different considerations than determining whether the employee's private expressions are protected:

> Although the First Amendment's protection of governmental employees extends to private as well as public expression, striking the *Pickering* balance in each context may involve different considerations.  When a teacher speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they 'in any way either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the schools generally.' (*citing Pickering*, 391 U.S. at 572-73).  Private

> expression, however, may in some situations bring
> additional factors to the *Pickering* calculus.   When a
> government employee personally confronts his immediate
> superior, the employing agency's institutional efficiency
> may be threatened not only by the content of the
> employee's message but also by the manner, time, and
> place in which it is delivered.

*Givhan*, 439 U.S. at 415.

The Eleventh Circuit in *Waters v. Chaffin*, 684 F.2d 833, 837 (11th Cir. 1982), provided additional guidance about the protections afforded a public employee's private speech.  It held that a public officer's off-duty derogatory comments about the acting local police chief while drinking at a bar was protected speech under the First Amendment.  Although the court recognized that the department had a substantial interest in developing discipline, esprit de corps, and uniformity to promote the public safety, the police department had not demonstrated actual harm or a reasonable likelihood of harm to its efficiency, discipline, or harmony such that the employee's off-duty speech could form the basis of the government's disciplinary action.  *Id*. at 840.  It explained:

> We do not doubt that the department may restrict the
> actions of its off-duty officers in many ways, but it does not
> follow that these off-duty restrictions may unnecessarily
> impinge  upon  private,  social  conversation.    Absent
> significant countervailing governmental interests, we are
> loathe to sanction the intrusion of the government's ear into
> the private lives of its employees.

*Id*. at 838-39.

In *Connick v. Myers,* 461 U.S. 138, 142, 103 S. Ct. 1684, 1687, 75 L. Ed. 2d 708 (1983)*,* the Supreme Court considered whether the First and Fourteenth

Amendments prevent the discharge of a state employee for circulating an internal questionnaire to other employees about office matters.  *Connick*, 461 U.S. at 140.  The  questionnaire, prepared by the plaintiff, posed questions about office transfer policy, office morale, and the need for a grievance committee.  *Id*. at 141.  The plaintiff's supervisor characterized her distribution of the questionnaire as an act of insubordination and terminated her.  *Id*.

Applying the *Pickering* balancing test, the *Connick* Court concluded that both the district and appellate courts erred in striking the balance in favor of the employee.  *Id*. at 143.   The Court held that "[w]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Connick*, 461 U.S. at 147.  The questionnaire distributed by the plaintiff were the plaintiff's reaction to her supervisor's decision to transfer her, a personal matter, not a matter of public concern.

> While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of [the plaintiff's] questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors.  The questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre.

*Id*. at 148.

> While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints

over internal office affairs.

*Id*. at 149.

The Court in *Connick* clarified that its responsibility in balancing the First Amendment rights of public employees against the interests of their public employers is to "ensure that citizens are not deprived of fundamental rights by virtue of working for the government"; its role is not to confer "a grant of immunity" to public employees.  *Id.*

In *Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987), the Court held that a public employee's right to free speech under the First Amendment was violated when she was discharged for remarking, after she heard of an attempt on the life of the President of the United States, that "if they go for him again, I hope they get him."  *Id*. at 379.  The Court concluded that (1) the statement was speech on a matter of public concern because it was made in the course of a conversation addressing the policies of the President's administration and followed a news bulletin relating to a matter of heightened public attention, and (2) the employer's interest in discharging the employee did not outweigh the employee's interest in exercising her First Amendment rights because (a) the remark did not interfere with the efficient functioning of the employer's office, (b) the comment was made in a private conversation between the employee and her co-employee's boyfriend in an area not generally accessible to the public, and (c) the employee, who was not a law enforcement officer, but rather a clerical employee whose duties did not generally involve contact with the public, was not in a position to further or injure the minimal law enforcement activity engaged in by her employer.

In *San Diego v. Roe*, 543 U.S. 77, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004),

the Court struck the balance in favor of the public employer when it held that a police officer's First Amendment rights were not violated when his employer terminated him for selling sexually explicit videos of himself on the internet while wearing a police uniform.  The officer contended that his off-duty conduct was unrelated to his employment and constituted protected speech.  The Court stated that the threshold inquiry, before the employee's speech is entitled to the *Pickering* balancing test, is whether the employee's speech touches on a matter of "public concern."  *Id*. at 82-83.  To determine whether the speech relates to a matter of public concern, courts examine the "content, form, and context" of the statement "as revealed by the whole record."  *Id*. at 83.  The *Roe* Court concluded that the officer's speech did not relate to a matter of public concern, thus failing the threshold inquiry.  The Court further found that the officer's expressions, which were widely broadcast and linked to his official status as a police officer, were detrimental to his employer, were designed to exploit his employer's image, and brought the professionalism of the police department into disrepute.  *Id*. at 81.

In *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), the Supreme Court held that the First Amendment does not protect a government employee from discipline based on speech made pursuant to his official duties because the employee is not speaking as a "citizen" for First Amendment purposes.  *Id*. at 421.  Thus, it was lawful for the employer to reassign, transfer, and deny a promotion to a deputy district attorney for writing a memorandum explaining his concerns about alleged inaccuracies in an affidavit used to obtain a search warrant in a pending criminal case.  The attorney was called by the defense at a hearing on a motion to dismiss a criminal indictment and recounted his observations about the inaccuracies in the affidavit.  The Court

stated that:

> [r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id*. at 421-22.

### b.  Free Association

Like the law on public employees' right to free speech, the law is clearly established that state employees also have a First Amendment right to engage in associative activity without retaliation.  *Cook*, 414 F.3d at 1320 (*citing Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb County*, 809 F.2d 1546, 1558 (11th Cir. 1987); *Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 465, 99 S. Ct. 1826, 60 L. Ed. 2d 360 (1979)).  Although a public employee's associations need not relate to a matter of public concern to be constitutionally protected,  *Hatcher v. Bd. of Pub. Educ.*, 809 F.2d 1546, 1558 (11th Cir. 1987) ("[A]pplication of a requirement that associational activity relate to a matter of public concern in order to be constitutionally protected would overturn Supreme Court and Eleventh Circuit jurisprudence and exact a substantial toll upon First Amendment liberties."), the employee's interest in engaging in the associational activity must still be balanced with the state's interest as an employer in promoting its efficient operations.  *Id*. at 1559; *Ross v. Clayton County*, 173 F.3d 1305, 1310 (11th Cir. 1999).

The Eleventh Circuit in *Hastings v. Bonner*, 578 F.2d 136 (11th Cir. 1978), determined that the First Amendment right of free association protected a teacher's

choice to bring her husband and a representative of a state teachers' union to a meeting with the superintendent about the nonrenewal of her teaching contract. *Id.* at 140-41.  Then, in *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir. 1984), *abrogated on other grounds*, *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 1997), the Eleventh Circuit held that a police officer's right to freedom of association was violated when he was terminated for dating a felon's daughter.  The *Wilson* court stated that "the First Amendment freedom of association applies not only to situations where an advancing of common beliefs occurs, but also to purely social and personal associations."  *Id.* at 1544.  In a footnote, the court noted the narrowness of its holding: "We do not hold that a law enforcement officer may never be fired because of associations with others."  *Id.* at n.3 (*citing Shawgo v. Spradlin*, 701 F.2d 470 (5th Cir. 1983), *cert. denied*, 464 U.S. 965, 104 S. Ct. 404, 78 L. Ed. 2d 345 (1983) (upholding the right of a police department to punish a male and female officer for off-duty dating and alleged cohabitation, because of a "rational connection between the exigencies of Department discipline and forbidding members of a quasi-military unit, especially those different in rank, to share an apartment or to cohabit."); *Gasparinetti v. Kerr*, 568 F.2d 311 (3rd Cir. 1977), *cert. denied*, 436 U.S. 903, 98 S. Ct. 2232, 56 L. Ed. 2d 401 (1978) (concluding that although certain police regulations were unconstitutionally overbroad, "a significant government interest" exists "in regulating some speech of police officers in order to promote efficiency . . . and instill public confidence in the law enforcement institution").

In *Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb County*, 809 F.2d 1546, 1558 (11th Cir. 1987), the Eleventh Circuit rejected a school board's contention that a school principal's attempts to bring a minister and a school board

member to her meeting with the superintendent and his assistant enjoyed no First Amendment protection after the Supreme Court's decision in *Connick* simply because the meetings related to a purely private concern.  The *Hatcher* court remanded the case so that the trier of fact could determine, consistent with the test set forth in *Pickering*, whether the balance between the principal's interest in engaging in her associational activity relating to a private matter, and the state's interest as an employer in promoting efficient operation of its school systems, supports the principal's claim that her right of association was violated.  *Hatcher*, 809 F.2d at 1559.

The Eleventh Circuit assessed the rights of a public employer against the public employee's intimate association right to be married in *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994).  In *McCabe*, an executive secretary to a city police chief brought suit against the city and the police chief, contending that they violated her right to freedom of association by transferring her to a less desirable job because of her marriage to a city police officer.  Without determining which of three legal standards applied, the court concluded that, under the *Pickering* balancing test, the *Elrod-Branti* analysis governing adverse employment actions experienced by employees because of their political affiliations, *see Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980), and a strict scrutiny analysis, the chief was justified in transferring the plaintiff because of her marriage to a police officer.  The court found that the police chief must have complete faith, trust, and confidence in his executive secretary.  *McCabe*, 12 F.3d at 1571-72.  The job from which the plaintiff was transferred required loyalty to the police chief on matters that were confidential and sensitive, including the hiring, disciplining, and

discharging of police officers.  *Id*.  The Eleventh Circuit determined that the police department's interest in the effective functioning of its office outweighed the plaintiff's interest in exercising her right to freedom of association with her husband:

> It is a matter of common experience that spouses tend to possess a higher degree of loyalty to their marital partners than to their superiors, and often discuss workplace matters with one another, even matters that a superior has designated as confidential . . . we believe that it was not only reasonable but necessary for Chief Sharrett to transfer McCabe in order to preserve the confidentiality of his office.

*Id*. at 1572.  The court also stated that any breach of confidentiality might cause "serious" damage to the functioning of the office, particularly if information were leaked about an investigation of misconduct.  *Id*. at 1573.

Under the *Elrod-Branti* analysis, the question was whether the employer can demonstrate that the forgoing of associational rights "is an appropriate requirement for the effective performance of the public office involved."  *Id*. (*quoting Branti*, 445 U.S. at 518, 100 S. Ct. at 1295).  "[I]n other words, the employer must demonstrate that the employee's exercise of associational rights would hinder the effective functioning of the employer's office."  *Id*.  The *McCabe* court concluded that the plaintiff's exercise of her intimate association right to be married to the police officer would compromise two qualities required to perform her job – her loyalty to the police chief and her ability to keep confidences.  *Id*.

Under a general strict scrutiny analysis, the analysis requires the government to demonstrate that its challenged action was necessary to serve a compelling state interest.  *Id*. at 1574.  The *McCabe* court found that the government had satisfied

the strict scrutiny test because the government's interest in the efficient and effective performance of government functions is compelling; the plaintiff's ability to keep confidences was essential to the proper functioning of the police chief's office; and her marriage to a police officer would likely undermine her ability to keep confidences.  *Id*. at 1574.

In *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1161 (11th Cir. 2002), the court held that a police officer who was terminated as a result of publicly exposing his plan to "overthrow" the police chief and, with the help of several newly elected city commissioners, install himself as the replacement, could be constitutionally terminated under the First Amendment for disrupting the daily activities of the police department.  *Id*.  The court noted that "Brochu crossed the line when he went beyond political activity as a citizen and created a secret plan, as an employee, to overthrow his superiors and then *shared* that plan with a few civilians in the community, actually enlisting their assistance in effectuating the 'coup.'" *Id*. at 1160 (emphasis in original).  The court found that Brochu compromised the ability of the police chief and the entire department to function effectively.  *Id*.

The Eleventh Circuit, in *Cook v. Gwinnett*, 414 F.3d 1313 (11th Cir. 2005), distinguished the test applicable to a public employee's claim of retaliation for exercising free speech rights from the test applicable to an employee's claim of retaliation for exercising rights of free association.  The issue in *Cook* was whether county school district officials violated an employee-school bus driver's First Amendment rights to free speech and free association by retaliating against her. Cook was president of a "union-like" organization representing non-teaching school employees and affiliated with the Georgia Association of Educators.  *Id*. at

1317.  Cook's speech activities included lobbying at the state capitol on behalf of and for the "collective welfare" of other bus drivers and expressing her concerns to co-workers and supervisors about the safety of children because of bus overcrowding and the lack of time allotted for pre-trip bus inspections.  *Id*. at 1319. Her associational activities included discussing union issues with other drivers and recruiting other union members in a non-disruptive manner.  *Id*. at 1320.

In assessing Cook's right to speech, the Eleventh Circuit held that Cook must satisfy the following test, consistent with Supreme Court precedent:

> (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. (citation omitted). If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech. (citation omitted).

*Cook*, 414 F.3d at 1318 (*citing Pickering*, *supra*; *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989)).

When assessing, however, the validity of a claim for retaliation based on free association, as opposed to free speech, the *Cook* court truncated the *Pickering* test to exclude the first requirement – the requirement that the speech involve a matter of "public concern."  As it did in *Hatcher*, the Eleventh Circuit in *Cook* emphasized that

> [i]n analyzing free association claims in this context, we do not apply the public concern portion of the *Pickering* analysis.  (citation omitted).  We do, however, apply the *Pickering* balancing test. (citation omitted).

*Cook*, 414 F.3d at 1320 (*citing Hatcher*, 809 F.2d at 1558; *Ross v. Clayton County*, 173 F.3d 1305, 1310 (11th Cir. 1999)).

After the Supreme Court decided *Garcetti*, *supra*, the Eleventh Circuit decided *D'Angelo v. Sch. Bd. of Polk County*, 497 F.3d 1203 (11th Cir. 2007).  The *D'Angelo* court held that the requirement in *Garcetti* that public employees must speak as citizens to be protected under the First Amendment also applies to the right of free association.  *Id*. at 1212.  The court affirmed the district court's conclusion that a public school principal's meetings with teachers and other principals as part of his effort to convert his high school to a charter school were not entitled to protection under the right of free association because such activities were "part and parcel of [the principal's] official duties" as principal and were not undertaken in the principal's capacity as a citizen.  *Id*. at 1205-06.  Significantly, the Eleventh Circuit also concluded that its decisions in *Hatcher*, *Wilson*, and *Hastings* were consistent with *Garcetti* because those cases protected the associational rights of public employees who were acting in their capacities as citizens.  *Id*. at 1213.

Finally, in a recent unpublished decision, *Myles v. Richmond County Bd. of Educ.*, 2008 U.S. App. LEXIS 5055, 2008 WL 596772 (11th Cir. March 6, 2008), the Eleventh Circuit held that a public educator's associations with school board members, representatives of the state teacher's union, and her co-workers were in the capacity as a "disgruntled employee, who was upset at having been denied promotions she thought she deserved," not in the capacity as a citizen. 2008 U.S. App. LEXIS 5055 at *5; 2008 WL 596772 at *2.  Although the teacher's complaints that unqualified persons were being appointed to positions in the school district touched on an important matter of public interest, the court found that the

complaints "centered predominantly around, and were driven by, her displeasure with having been denied promotions she thought she deserved."  2008 U.S. App. LEXIS 5055 at *2-*3, 2008 WL 596772 at *1-*2.  Accordingly, the court concluded that the associational activities were not protected under the First Amendment.  2008 U.S. App. LEXIS 5055 at *5, 2008 WL 596772 at *2.

Defendants rely solely on a decision from the Middle District of Georgia in support of their contention that Plaintiff has no First Amendment right of free association to hire an attorney to pursue a personal, employment-related grievance.  *See Goddard v. City of Albany*, 2007 WL 527991, 2007 U.S. Dist. LEXIS 10262 (M.D. Ga. Feb. 14, 2007).  In *Goddard*, the director of the Albany Civic Center alleged that she was terminated for criticizing the city's policy of advancing money on ticket sales to the owners and/or promoters of the South Georgia Wildcats football team and for hiring an attorney to assist her with her personal employment grievances.  Citing *Garcetti*, the court found that although the plaintiff's criticisms of the ticket policy involved matters of public concern, the speech was not protected because it related to her official duties; the plaintiff therefore was not speaking as a citizen.  2007 WL 527991 at *4, 2007 U.S. Dist. LEXIS 10262 at *14.  Similarly, the court held that the plaintiff's right to petition the government was not violated when she was allegedly terminated her for hiring an attorney because she hired an attorney to pursue personal grievances relating to her job performance and not to a matter of public concern.  2007 WL 527991 at *5; 2007 U.S. Dist. LEXIS 10262 at *18.

Most pertinent to the issue presented in the pending motion, however, was the *Goddard* court's ruling on the issue of "whether a government employee has a protected First Amendment right to associate with an attorney to pursue a personal

grievance when she has no protected First Amendment right to pursue the very grievance for which she has chosen to associate with the attorney." 2007 WL 527991 at *6; 2007 U.S. Dist. LEXIS 10262 at *20-*21. The court held that because the plaintiff had no protected First Amendment right of petition to hire an attorney to pursue her personal, job-related grievances with the city, the plaintiff likewise had no First Amendment right to associate with the attorney where "the same exact facts that give rise to Plaintiff's petition claim give rise to her association claim." 2007 WL 527991 at *6; 2007 U.S. Dist. LEXIS 10262 at *20. While acknowledging the Eleventh Circuit's decisions in *Cook* and *Hatcher* that no public concern requirement applies to freedom of association claims, the *Goddard* court nevertheless stated that

> [h]owever, after careful consideration, the Court concludes that if it were to interpret these cases to mean that the 'public concern' requirement never applies to a free association claim, it must reach the inexplicable conclusion that the First Amendment provides constitutional protection for a government employee to hire an attorney to pursue the employee's personal employment grievance, but no protection exists for an employee who does not possess the wisdom (or perhaps the resources) to hire an attorney. The rationale underlying the 'public concern' requirement cannot sanction such a result.
>
> In a similar situation, the Eleventh Circuit has made clear that there is no rational basis for requiring a public employee's speech to relate to a matter of public concern but not impose such a requirement on a right to petition claim . . .
>
> . . .
>
> [N]o sound basis exists for granting greater constitutional protection to a government employee's pursuit of a

> personal employment grievance accompanied by a lawyer than a grievance pursued pro se.
>
> The Court finds the cases which hold that no public concern requirement exists for freedom of association claims to be distinguishable from the case at bar.  Those cases did not involve association for the sole purpose of expressing views that were not entitled to First Amendment protection.

2007 WL 527991 at *6-*7; 2007 U.S. Dist. LEXIS 10262 at *21-*22.

The *Goddard* court acknowledged the difficulty in distinguishing *Hatcher*: "The more difficult aspect of *Hatcher* to distinguish is the court's recognition of the plaintiff's First Amendment right to bring her minister and a school board member to a meeting with the school superintendent to discuss a matter of purely private concern."  2007 WL 527991 at *7; 2007 U.S. Dist. LEXIS 10262 at *24. The court dismissed the problem, however, by concluding that

> [u]nlike the present case, however, the *Hatcher* court was not squarely presented with the issue of whether a governmental employee has a right under the free association clause to associate with someone solely for the purpose of pursuing a purely private grievance that is not protected by the First Amendment.  In fact, the *Hatcher* court did not even address whether it based its decision upon 'expressive association' or upon the intimate nature of an individual's association with her minister.  Quite simply, the *Hatcher* court did not have to confront the issue which forms the basis of this Court's ruling, and therefore, that court did not decide the issue presented today.
>
> The Court emphasizes the narrow reach of today's ruling. It does not stand for the proposition that a public concern requirement exists for all free association claims.  That conclusion would be contrary to well established Eleventh

Circuit precedent.  The Court simply holds that in the unusual circumstance where an association exists solely for the purpose of petitioning the government on behalf of a government employee for an entirely private employment grievance, the nature of the grievance must be considered in determining whether the association is protected under the First Amendment.  When the grievance itself is not protected, the act of labeling the claim as one for free association instead of free petition cannot linguistically rescue an otherwise deficient claim.  To interpret the applicable precedent otherwise would lead to the perverse proposition that a government employee has a First Amendment right to hire a lawyer to pursue a personal employment grievance when that same employee has no First Amendment right to pursue that same grievance on her own.  The framers of the Constitution could not have intended such an irrational result.

2007 WL 527991 at *7-*8, 2007 U.S. Dist. LEXIS 10262 at *24-*26.

### 3. Application

In light of the evolution of Supreme Court and Eleventh Circuit decisions set forth above, I must respectfully disagree with the analysis and conclusion in *Goddard* relating to the free association claim.  The primary focus in evaluating the First Amendment claim of a public employee, as *Pickering* commands, is to "arrive at a balance" between the rights of the employee, as a citizen, and the interest of the State, as an employer.  *Pickering*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734.  As I interpret the decisions following *Pickering*, the Court's emphases on "public" versus "private," "citizen" versus "employee," and whether and how the public employee's First Amendment activities impact the employer are guideposts that assist in the determination of whose favor – the employer or the employee – the

balance should be struck.

In its focus on the public versus private distinction, the *Goddard* court examined the trees but missed the forest.  Had it balanced the respective interests of the employer and the employee in assessing the merits of the plaintiff's right to free associate with counsel, as *Pickering* requires, it would have asked the fundamental, dispositive question: Does a public employer have a legitimate interest in interfering with the hiring of an attorney, or the hiring of a particular attorney, by an employee?  I conclude that in the typical case, the employer's interest is far too attenuated to justify intruding on an individual's clearly established right to associate with counsel.

At this point, Defendants have made no contention that Plaintiff's associations with his attorney have actually, or are reasonably likely, to harm the functioning, discipline, "esprit de corps," or harmony within the Sheriff's Office.  Obviously, an employee's act of hiring an attorney or filing a lawsuit may aggravate any employer, particularly where, as here, the attorney hired had previously represented an "outspoken critic" of the employer.  However, "[t]he right of free association may not be abridged merely because its exercise may be annoying to some people."  *Hastings v. Bonner*, 578 F.2d 136, 141-42 (11th Cir. 1978) (*quoting Coates v. City of Cincinnati*, 402 U.S. 611, 615, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971)).  *See also Thorne v. City of El Segundo*, 726 F.2d 459, 469-70 (9th Cir. 1983) (holding that police department inquiry burdening employment applicant's privacy and free association rights must be evaluated under "heightened scrutiny" and thus be "narrowly tailored" to police department's "legitimate interests.").  Defendants have made no assertion that Plaintiff's act of hiring an attorney, or even his hiring of Attorney Stevenson in particular, to represent him in

a personal wage dispute with the Sheriff's Office has undermined Defendants' authority, destroyed working relationships within the office, or endangered its functioning.  "At some point, [the public employer's] concerns are so removed from the effective functioning of the public employer that they cannot prevail over the [constitutional] rights of the public employee."  *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

To assume otherwise and find that hiring an attorney infects, as a matter of law, the authority and functioning of the public employer, is to relegate the attorney-client relationship to an evil in itself.  The Supreme Court has specifically rejected that characterization.  In *Bates v. State Bar of Ariz.*, 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977), the Supreme Court stated that

> [i]t would be difficult to understand [our cases recognizing that collective action undertaken to obtain meaningful access to the courts is protected under the First Amendment] if a lawsuit were somehow viewed as an evil in itself.  Underlying them was the Court's concern that the aggrieved receive information regarding their legal rights and the means of effectuating them.  This concern applies with at least as much force to aggrieved individuals as it does to groups.

433 U.S. at 377, 97 S. Ct. at 2705, 53 L. Ed. 2d at 831.

The law is replete with cases where employees have sued their employers.  Congress and state legislatures across the nation have recognized, by enacting numerous statutes, the right of employees to assert their legal rights and pursue employment-related grievances against their employers without fear of retaliation.  *See*, *e.g.*, Title VII, Fair Labor Standards Act, Americans with Disabilities Act, National Labor Relations Act.  Such legislation evidences lawmakers'

understanding and approval of the rights of individuals in the United States, employee or non-employee, to obtain counsel and pursue their grievances through the civilized, non-violent channels that constitute the legal system.

That the subject matter for which Plaintiff hired his attorney concerned a personal matter has little bearing on whether his employer has a legitimate interest in foreclosing Plaintiff's right to associate with counsel of his choice, as *Goddard* erroneously concluded.  Clearly, Plaintiff would not have a First Amendment right to freely speak about his wage-related dispute because Plaintiff would be speaking as a "disgruntled employee" and not as a citizen on a matter of public concern.  However, Plaintiff does not contend that the Sheriff's Office retaliated against him for speaking about his wage dispute; rather, Plaintiff contends that the Sheriff's Office retaliated against him simply because he hired a particular attorney to represent him in that matter.  Absent some overriding reason, the Constitution cannot and does not sanction such a result.  "The right to obtain legal advice does not depend on the purpose for which the advice is sought."  *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000) 209 F.3d at 954.  "In sum, the First Amendment protects the right of an individual or group to consult with an attorney on *any* legal matter."  *Id*. (emphasis added).

In *Garcetti*, the Supreme Court's conclusion that a public employee who speaks pursuant to his employment responsibilities is not speaking as a citizen relied on the Court's finding that such speech has no relevant analogue to speech by citizens who are not government employees.  *Garcetti*, 547 U.S. at 424.  Here, however, a public-private analogue exists.  A public employee who hires an attorney to determine and pursue his rights under law is analogous to a private citizen who seeks the advice and counsel of an attorney in an employment-related

matter.  Consistent with *Pickering*, the interest of a public employer in limiting an employee's opportunity to associate with counsel is not significantly greater than its interest in limiting a similar association by any member of the general public. *Pickering*, 391 U.S. at 573.  Accordingly, I hold that a public employee who associates with an attorney outside of work in a traditional attorney-client relationship, for the sole purpose of pursuing a legitimate, employment-related grievance through the civilized channels of the legal system, is acting in the capacity of a private citizen and enjoys First Amendment protection.

To hold otherwise would be to ignore, as *Goddard* did, the robust collection of decisions discussed in this opinion protecting an individual's right to freely associate with counsel.  In addition, *Goddard*'s holding on the free association claim cannot be reconciled with the Eleventh Circuit's decisions in *Hastings, supra* (First Amendment right of free association protects teacher's choice to bring her husband and a representative of the state teacher's union to a meeting with the superintendent about the nonrenewal of her teaching contract); *Taylor, supra* (police officer's right to freedom of association violated when he was terminated for dating a felon's daughter); and *Hatcher* (principal's attempt to bring a minister and a school board member to her meeting with the superintendent and his assistant may be protected by First Amendment), which the Eleventh Circuit reaffirmed in *D'Angelo*, *supra*.

The Eleventh Circuit's recent decision in *Myles* (public educator's associations with school board members, representatives of the state teacher's union, and her co-workers not protected under First Amendment because educator was acting as a disgruntled employee upset at having been denied promotions she thought she deserved) is distinguishable.  A clear difference exists between an

employee's internal associations with co-workers and other employees within her profession (school board members) and an employee's external associations with an attorney.  The former associations are more akin to those in *Connick*, where the employee communicated her displeasure about a mandatory job transfer to her co-workers in an effort to transform her grievance into a "cause celebre."  Clearly, such "internal" communications threaten to permeate the office and undermine its functioning.  When, however, an employee communicates with an attorney, who is bound by rules of legal ethics to protect the confidentiality of his client's communications and avoid extrajudicial activities that might prejudice the rights of both the employee and the employer, the concerns that were present in *Connick* evaporate.

Limiting a public employee's right to counsel of choice could be especially unjust in the nation's small communities.  Consider a large public employer that employs a good percentage of the citizens of a small community.  A limited number of qualified attorneys may be available in that small community.  If an employee of the public employer hires counsel to represent him in a dispute with the employer, should other employees then be foreclosed from hiring that qualified attorney in the future merely because the employer despises the attorney because of his prior representation?  I think not.  Such a limitation would intrude too far on the constitutional right of free association.

In concluding that Plaintiff has stated a claim upon which relief can be granted under the First Amendment right to free association, I merely decide that question on the basis of the allegations in the complaint.  I express no opinion about the actual merits of Plaintiff's allegations, including any defenses that may be applicable.  Construed in the light most favorable to Plaintiff, as I am required

to do on a motion to dismiss, the allegations in the complaint state a claim upon which relief can be granted.

## C.  Qualified Immunity

Defendant McNesby contends that even if Plaintiff has stated a claim under § 1983 for violation of his right to free associate with counsel of his choice, the claim should nevertheless be dismissed against him in his individual capacity on the ground that he is immune from suit under the defense of qualified immunity. The parties agree that the proper analysis of whether  government officials are entitled to qualified immunity is governed by the Eleventh Circuit's decision in *Snider v. Jefferson State Cmty. College*, 344 F.3d 1325 (11th Cir. 2003).  There the court stated that "the defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Id.* at 1327 (*quoting Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (citation omitted)).  In determining whether a constitutional right is "clearly established," the Supreme Court has explained:

> [Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'   For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . .; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

. . .

> [O]fficials can still be put on notice that their conduct violates established law even in novel factual circumstances. Indeed, in [*United States v. Lanier*, 520 U.S. 259, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997)], we expressly rejected a requirement that previous cases be 'fundamentally similar.' Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts. Accordingly, pursuant to *Lanier*, the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of Hope was unconstitutional.

*Hope v. Pelzer*, 536 U.S. 730, 740-41, 122 S. Ct. 2508, 2515-16, 153 L. Ed. 2d 666, 679-80 (2002). In addition, "[w]hen case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Snider*, 344 F.3d at 1329.

The law has been clearly established by the Supreme Court and the Eleventh Circuit that public employees have a right, under the First Amendment to the federal Constitution, to engage in associative activity without retaliation. *Cook*, 414 F.3d at 1320 (*citing Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb County*, 809 F.2d 1546, 1558 (11th Cir. 1987); *Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 465, 99 S. Ct. 1826, 60 L. Ed. 2d 360 (1979)). Further, it has been clearly established for more than forty years that the right of a citizen to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of association. *United Mine Workers of Am. v. Illinois State Bar Ass'n*, 389 U.S. 217, 221-22, 88 S. Ct. 353, 19 L. Ed. 2d 426

(1967);  (First and Fourteenth Amendments protect right to hire an attorney); *Brotherhood of R.R. Trainmen v. Virginia*, 377 U.S. 1, 7, 84 S. Ct. 1113, 12 L. Ed. 2d 89 (1964) ("A State could not . . . infringe in any way the right of individuals and the public to be fairly represented in lawsuits . . . ."); *NAACP v. Button*, 371 U.S. 415, 429-30, 83 S. Ct. 328, 9 L. Ed.2d 405 (1963) ("[A]bstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion.")).  Based on this clearly established law, I find that Defendant McNesby had "fair warning" that his allegedly retaliatory conduct in connection with Plaintiff's hiring of Attorney Stevenson attorney was unconstitutional.  Accordingly, Defendant McNesby is not entitled to qualified immunity in his individual capacity.

## D.  Official Capacity

Defendant McNesby next requests that Plaintiff's claim for violation of his right to associate with counsel of his choice be dismissed against him in his official capacity. As grounds for dismissal, McNesby contends that he did not implement, with deliberate indifference, a custom, policy, or practice that led to the alleged constitutional deprivation and that an official capacity claim under § 1983 may not be premised on a theory of respondeat superior.

Defendant's contention is without merit. Liability may attach under § 1983 when the claimant (1) has been deprived of a right secured by the Constitution and the laws of the United States and (2) the defendant has acted "under color of" state law in depriving him of this right. 13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §3573.2 at 203.  As to the first requirement, I have

already found that Plaintiff has stated a claim for violation of his First Amendment right to free association under the Constitution.

To satisfy the "under color of" state law requirement, the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482, 495 (1982). Conduct may be attributable to the state "when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions." 457 U.S. at 936 (*citing Monroe v. Pape*, 365 U.S. 167, 172, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611, 638 (1978) (emphasis added). Further, "Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe*, 365 U.S. at 171-72 (emphasis added).

The alleged violation of Plaintiff's constitutional right to freely associate with an attorney of his choice is not based on a theory of respondeat superior; rather, the complaint alleges that Sheriff McNesby *himself* retaliated against Plaintiff for hiring Attorney Stevenson by transferring Plaintiff from his position as Officer in Charge of the Crimestoppers Unit to a less desirable patrol position on the midnight shift. Obviously, Defendant McNesby, as Sheriff of Escambia County, is the final policy maker of the Escambia County Sheriff's Office.

Therefore, Plaintiff has stated a claim upon which relief can be granted against Defendant McNesby in his official capacity.

## E. Defamation

Finally, Defendants request that the claims for defamation under § 1983 and Florida law be dismissed.  One ground asserted in support of dismissal is that the allegedly defamatory article written by Defendant Blackburn is not defamatory as a matter of law.

Because Plaintiff has attached the article as an exhibit to the complaint (Exh. B., Doc. 1-2:14), I may assess the merits of the request for dismissal without converting the motion to dismiss into a motion for summary judgment.  *Williams v. Carney*, 157 Fed. Appx. 103, 105, n.2 (11th Cir. 2005); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal" without converting the motion to dismiss into a summary judgment request.).  The full text of the article is copied below:

> FREE SPEECH?  I read with great interest you're [sic] reporting Escambia County Sheriff's Office Deputy Jeff Van Camp's reassignment from the Crimestoppers program (Independent News, The Buzz, "Crime Stopper Stopped," Sept. 21).  You reported Deputy Van Camp angered the Sheriff's Office, when he filed a complaint that he was not promoted to a sergeant's position, which he felt he was entitled to after patiently trying to work within the promotion process.  How noble of your paper to single out one specialty unit but maybe you didn't realize the Sheriff's

Office has many similar assignments.

Are the two dozen school resources officers who come into contact with thousands of impressionable young minds less important?  The three DUI specialists whose primary function is the successful apprehension of drunk drivers not worthy?  What about our narcotics officers who spend countless hours of training in the specific detection of narcotics and elimination of hazardous ingredients in making designer drugs?  What about our K-9 officers, Crime Scene, and Homicide Investigators? All of these are specialized persons but are by definitions not supervisors. To indicate Van Camp is the only one to try to work through the system is a direct slap at the rest of these wonderful and equally talented Sheriff's Office employees.

Van Camp served this office admirably in his position but he did not approve reports, suspend or discipline, reward, or grant leave requests.  Van Camp has personally glamorized his normal duties and through the use of legal counsel has attempted to bypass the current selection promotional process.  This cheats the other numerous candidates of a fair chance at a limited number of supervisory positions.

What is blatantly obvious is this paper's continued attempts to bring blame and discredit to incumbent Sheriff Ron McNesby and staff by hiding behind the First Amendment. Continue to picket and whine but please report unbiased and fair.  As I have witnessed so often when reading your tabloid, the truth is presented as you see it and seldom do you let facts stand in your way of biased reporting.

– Rex Blackburn, Pensacola

Under Florida law, defamation is "a false and unprivileged publication by letter, or otherwise, which exposes a person to distrust, hatred, contempt, ridicule

or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment." *Thomas v. Jacksonville TV*, 699 So. 2d 800, 803 (Fla. 1st DCA 1997) (*quoting Cooper v. Miami Herald Publ'g Co.*, 159 Fla. 296, 31 So. 2d 382, 384 (Fla. 1947); *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953); *Axelrod v. Califano*, 357 So. 2d 1048, 1050 (Fla. 1st DCA 1978)). Implicit in the requirement that a defamatory statement be false to be actionable is the converse principle that expressions of pure opinion are protected by the First Amendment.  *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985).

Whether the challenged statement is one of fact or opinion is a question of law to be determined by the court.  *Id. (citing From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 56-57 (Fla. 1st DCA 1981)).  *See also Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 (4th Cir. 1987); *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir. 1983); *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983).  In determining whether a challenged statement is fact or opinion, a court considers the facts surrounding the publication, including the context in which the statement was made.  *Potomac Valve & Fitting, Inc.*, 829 F.2d at 187-88; *Lewis*, 710 F.2d at 553.

> [E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole . . . [W]here the language of the statement is cautiously phrased in terms of apparency or is of a kind typically generated in a spirited legal dispute in which the judgment, loyalties and

> subjective motives of the parties are reciprocally attacked
> and defended in the media and other public forums, the
> statement is less likely to be understood as a statement of
> fact rather than as a statement of opinion.

*Lewis*, 710 F.2d at 553 (internal quotations and citations omitted).

The article written by Defendant Blackburn is protected speech under the First Amendment because the entire article, including the particular statements which could colorably be construed as defamatory, are pure expressions of opinion.  The article was published in the "Rant & Rave" section of a newspaper. At the top of the page is the unambiguous heading "Letters and Opinions." (Emphasis added).  The lead-in to Blackburn's article is "FREE SPEECH?"  Based on these identifiers, the article was clearly an editorial or commentary, not a statement of fact.

The letter appears to have been Blackburn's reaction to the newspaper's coverage of Plaintiff's wage dispute.  Apparently, Blackburn perceived the newspaper's reporting as being biased against the Sheriff's Office.  The article was Blackburn's attempt to level the playing field and communicate the perspective of the Sheriff's Office.  The intent was not malicious. It was Blackburn's fair comment about a topic that the newspaper had injected into the realm of public debate.  Consistent with the Fourth Circuit's decision in *Potomac Valve & Fitting*, *supra*, the article is best characterized as a "reciprocal attack" in a public forum, less likely to be understood as a statement of fact, more likely to be understood as a statement of opinion.

The article contains no defamatory statements.  In fact, Blackburn even complimented Plaintiff, opining that "Van Camp served this office admirably in his position." (Emphasis added).  Only two sentences in the entire article merit

Case 3:08-cv-00166-RS-MD   Document 12   Filed 06/20/08   Page 38 of 40

attention.  Those sentences are the following:

> Van Camp has personally glamorized his normal duties and through the use of legal counsel has attempted to bypass the current selection promotional process.  This cheats the other numerous candidates of a fair chance at a limited number of supervisory positions.

Plaintiff mischaracterizes these statements as accusing him of "being a 'cheat' and by implication a liar because of his attorney's efforts to represent [him] on his wage claim with the Sheriff's Office."  In *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50 (Fla. 4th DCA 1976), the court stated that:

> Plaintiff/appellee complained that defendants accused him of *cheating* and *stealing from the public* and that he had his "*fingers in* the pot."  A charge of cheating or stealing, if false and made with knowledge of such falsity or with reckless disregard for the truth thereof, would certainly be beyond the constitutional privilege established by the *New York Times* standard.  However, in proper context the statements which defendants actually made do not carry the implication suggested by plaintiff.  The first article referred to an editorial in which the newspaper asserted that the public and the school board had been *cheated by Mr. Early's lack of leadership*, while the second article stated in an editorial that "Mr. Below sits on the sideline doing what he can when Mr. Early's fingers aren't in the pot" – *implying, not thievery, but incompetent intervention* in the operation of the school system.  Taken in proper context, no reader of the newspaper articles could have thought that the newspaper was charging Early with the commission of any criminal offense.

*Id*. at 52 (emphases as in original).

Here, as in *Palm Beach Newspapers*, the context in which the statements were made does not support Plaintiff's characterization of them.  Specifically,

Blackburn has not implied that Plaintiff is a "liar."  Instead, Blackburn asserts only that the duties required to perform Plaintiff's job as Officer in Charge of the Crimestoppers Unit are not on par with the duties required of a supervisor and that Plaintiff is therefore not entitled to supervisor compensation.  In Blackburn's *opinion*, Plaintiff has unfairly attempted to circumvent the promotional process by hiring an attorney and taking legal action.  The belief that hiring an attorney and taking legal action unfairly places a person "at the front of the line" is a belief held by many.  The opinion is not defamatory and is certainly not deserving of a federal lawsuit.

The First Amendment cuts both ways.  While Plaintiff has stated a claim of retaliation for invoking his First Amendment right to associate with counsel of his choice, the First Amendment also protects Defendant Blackburn's right to express an opinion.

### III.  Conclusion

Defendants' "Motion to Dismiss, Or In the Alternative, Motion For More Definite Statement" (Doc. 4) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Defendant McNesby's request for dismissal of the civil rights claim arising under § 1983 and the First Amendment right to associate with counsel is **DENIED** in McNesby's official and individual capacities.

2.  Defendants' request for dismissal of Plaintiff's claim for defamation under § 1983 and Florida law is **GRANTED**.  Plaintiff's claim for defamation is **DISMISSED WITH PREJUDICE**.

3.  All other requests are **DENIED AS MOOT**.


ORDERED on June 20, 2008.


/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**